UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 3:21-cr-46-RLY-MJD |
| TIMOTHY L. GUY, | ) |
| Defendant. | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

COMES NOW the United States of America, by Zachary A. Myers, United States Attorney for the Southern District of Indiana, and Todd S. Shellenbarger, Assistant United States Attorney, and respectfully submits the following memorandum for consideration by the Court in deciding the appropriate sentence in this matter.

**I.      Procedural History**

On August 26, 2021, Guy was charged via Indictment with one count of possession of a firearm by a convicted felon, one count of receiving stolen property, and one count of possession of sexually explicit material involving minors. (Dkt. No. 1). On April 26, 2023, a Petition to Enter a Plea of Guilty was filed, with Guy agreeing to plead guilty on all charges. (Dkt. No. 36). The Court held a Change of Plea Hearing on June 15, 2023, in which the defendant plead guilty as charged, and has scheduled a Sentencing Hearing for August 8, 2023. (Dkt. No. 41). The government now sets forth arguments to the Court which support a total term of imprisonment of no less than 120 months.

[1]

## II.     Statement of Facts

### A.     Theft of Ammunition from Crane Naval Facility

Timothy Guy was a 38-year-old employee of the Crane Naval facility, starting in 1966 and retiring in 2004. His work at Crane provided him with access to ammunition. During his tenure there, he began falsifying destruction documentation showing that ammunition and munitions had been destroyed that were, in actuality, smuggled out of the installation.

Guy lived in an old bus on a three-acre plot of land near Loogootee, Indiana in April of 2021. The bus was parked on a property that also had a collapsed residence on it. Guy was arrested on or about August 10, 2018, in Loogootee, Indiana for child pornography charges after being observed viewing suspected child pornography at a Wendy's restaurant—where he went to utilize the free Wi-Fi network access. Guy was released on bond after his August 10, 2018, arrest until being sentenced for possession of child pornography by the Martin County Circuit Court on April 22, 2021. He received a sentence of time served plus 1091 days on electronic monitoring supervised by the Dubois County Community Corrections program. Guy was placed on an ankle monitor on April 22, 2021.  (Dkt. No. 44, PSR ¶ 61)

On April 30, 2021, community corrections officers went to Guy's residence to conduct a home inspection but found that he was not home. The officers met with Guy in Jasper and found that he was in possession of an undeclared computer. Guy accompanied the officers back to his Martin County residence and admitted to having data storage devices on the bus which contained child pornography images. A Martin County Sheriff's officer assisting the corrections officers quickly located printouts of child pornography images in the bus. Thereafter, Guy was again arrested for possession of child pornography material on April 30, 2021 and has remained in either State or federal custody since then.

[2]

Indiana State Police investigators and Martin County Sheriff's deputies began a search of Guy's property upon his April 30, 2021, arrest and discovered a cellar door to the collapsed house on the property. When a deputy checked the cellar, he located a vast amount of ammunition and other material. The deputy then backed out of the cellar and a search warrant was applied for to search the cellar and confiscate any contraband inside. The search warrant was executed on May 5, 2021. Five different areas of the cellar were found to contain items of interest to investigators. Most of the items located were metal ammo cans of varying size and condition. Personnel found a large number of ammo cans which were then placed in a vehicle for transport to the Crane Naval facility and subsequently secured in a safe location. More than 10,000 rounds of ammunition comprised of .30 caliber, .50 caliber, 5.56mm, 7.62mm, 9mm, and .45 caliber ammunition owned by the United States Department of the Army—with a value of greater than $1,000—were located and recovered. During the course of the investigation, near the time of his initial arrest, Guy admitted that while working for the Crane Army Ammunition Activity Center, he stole large amounts of military grade ammunition.

**B.      Unlawful Possession of Firearms**

The Evansville ATF also participated in the search of Guy's property. The following functional firearms were located:

- one Maadi Company, Model RML 7.62x39 caliber rifle, bearing serial number ES02991;

- one Norinco, Model SKS 7.62x39 caliber rifle, bearing serial number 11132017P;

- one Colt, Model SP1, .223 caliber rifle, bearing serial number SP126430;

- one Beretta Pietro, Model 75, .22 caliber pistol, bearing serial number F29664; and

- one Ithaca Gun Company, Model 1911, .45 ACP caliber pistol, bearing serial number 24629.

The firearms were examined, test fired, and found to be operable by the lead assisting ATF agent.

### C. Possession of Child Pornography

Based on Guy's aforementioned conviction for Possession of Child Pornography in Martin County, Indiana, he was sentenced, in part to electronic monitoring at his residence. During the visit by community corrections officers on April 30, 2021, it was discovered that Guy was continuing to keep and view child pornography. Guy acknowledged to the community corrections officers that numerous thumb drives and other data storage devices he kept in his bus were used by him to save the child pornography images he collected. During the search mentioned above, several laptop computers, a large number of data storage devices, and paper printouts of child pornography images were seized.

On May 1, 2021, Guy agreed to provide a recorded statement to investigators after waiver of his *Miranda* rights. In this statement, Guy provided details about his child pornography collection activity over the years. Guy identified some of the internet-based file sharing software programs he used to download and save child pornography. Guy admitted that he viewed child pornography he had saved on thumb drives during the period of time in which he was on bond for his first child pornography arrest. He denied downloading new material while on bond and did not have internet access at his residence. Guy discussed his interest in the "LS Models" series. Guy claimed that he had researched information about this series which he said was produced by Russian actors and involved paid models. Guy denied any history of contact offending but was very forthcoming about his sexual interest in viewing images involving minor females. At one point Guy stated, "I like little girls."

[4]

Guy admitted using the images for sexual arousal and estimated that he looked at the material more than once a week on average. The primary focus of his collection of child pornography was the "LS Models" series which depicts minor females removing clothing in a sexually explicit manner and includes the lascivious exhibition of the genitals and pubic area of the minor females. Guy reported that the officer who searched his residence in 2018, after his first child pornography arrest, "missed" the child pornography material he had saved on the data storage devices. It is unclear why the large amount of ammunition mentioned above, and child pornography materials were not discovered. Guy estimated that he had upwards of 250,000 child pornography images saved on various thumb drives and discs he kept in and around his residence. Guy claimed to have collected all the material over a ten-year period. Investigators conducting the search located and seized at least 875 data storage discs and 60 thumb drives. The contents of these data storage devices include depictions of minors engaged in sexually explicit conduct, and an examination of the representative sample of the material saved on the thumb drives confirmed Guy's statements. The thumb drives contained more than 600 child pornography images and included prepubescent minors or minors under the age of twelve years. The images had been downloaded from the internet and saved on the data storage devices.

### III.     The 18 U.S.C. § 3553(a) Factors Weigh in Favor of a Sentence Within the Guidelines and Statutory Sentencing Range as Properly Calculated by the Probation Department

The following factors set forth in Section 3553(a) support a term of imprisonment within the statutory and Guideline range.

#### A.     Nature and Circumstances of the Offense

The nature and circumstances of the offense are set forth in Section II above. Guy's collection of child pornography included a large number of images depicting sexually exploited

[5]

minors and images depicting both prepubescent minors and minors under the age of twelve years old. The Seventh Circuit has recognized as important and legitimate a district court's consideration of the lasting harm to victims linked to the production of child pornography, particularly when images of the children are distributed to others over the internet. *See United States v. Klug*, 670 F.3d 797, 800-01 (7th Cir. 2012). A sentence below the properly calculated Guideline and statutory range would not recognize the harm suffered by the victims of the sexual exploitation found in Guy's collection of downloaded and saved child pornography images.

      **B.**      **History and Characteristics of the Defendant**

Guy's history reflects that he is a repeat violator of laws intended to protect minors from sexual abuse. In 2018, Guy was charged with felony Possession of Child Pornography. (Dkt. No. 44, PSR ¶ 61). However, Guy was not deterred by his arrest and subsequent prosecution for possession of child pornography. Between 2018 and 2021, while Guy was on bond for the possession of child pornography charge, he continued to view and use for sexual arousal child pornography images that he continued to keep at his residence. Guy vividly described his sexual interest in minor females—going so far as to expressly state that he likes "little girls" and to point to a specific version of child pornography which he derives the greatest pleasure from. This is not the mentality of a reformed offender. Guy's history demonstrates that he poses a high risk to minors in the community and that he has been unwilling to reform his conduct after being given a clear warning and the opportunity to do so.

      **C.**      **Need for Imposed Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

The collection and possession of child pornography is a serious offense that causes grave harm to the children depicted in the images. The digital and printed child pornography materials

possessed by Guy depict minors engaged in sexually explicit conduct and depicts minor females removing clothing in a sexually explicit manner—including the lascivious exhibition of the genitals and pubic area of the minor females. The harm to children depicted in child pornography was recognized years ago by the United States Supreme Court in *New York v. Ferber*, 458 U.S. 747, 758 (1982). In *Ferber*, the Supreme Court noted that, in the judgment of state and federal legislators, as well as authors of relevant literature, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Ferber*, 458 U.S. at 758 (citations omitted). The *Ferber* court also observed that the "[pornographic] materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* at 759 (citation omitted). Furthermore, the court stated:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt [the victim] in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography… It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.

*Id* at 759 & n. 10 (citations omitted). *See also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) (reaffirming Ferber in case involving possession of child pornography).

In 2002, the United States Supreme Court again acknowledged the harm to victims depicted in child pornography and observed that a new harm is caused each time the images are shared with someone different. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002). In *Free Speech Coalition*, the court noted that "as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory

statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being." *Id* at 249. Moreover, in rejecting defendants' claims that the "mere" receipt or possession of child pornography is a victimless crime, courts have noted at least three specific harms inflicted on the children depicted in the pornographic images:

> First, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization.
>
> Second, the mere existence of child pornography represents an invasion of the privacy of the child depicted. Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent. The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.
>
> Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials…[T]here is no sense in distinguishing, as [Defendant] has done, between the producers and the consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

*United States v. Norris*, 159 F.3d 926, 929-30 (5th Cir. 1998). A sentence below the properly determined statutory and Guideline range would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment in the instant case involving many child exploitation victims depicted in the vast collection of child pornography downloaded and saved by the repeat offending defendant.

[8]

D. **Need for Imposed Sentence to Protect the Public and Deter the Defendant**

Guy poses a serious threat to commit further crimes upon release from imprisonment based on his strong sexual interest in minors and his demonstrated propensity to act on this interest. Guy's propensity to act on this interest is clearly demonstrated by his recent conviction and his decision to continue to fuel his sexual interest in minors through the collection and viewing of child pornography as charged in the indictment in this case.

Significant research findings, based on self-reported acts, show child pornography collectors indeed pose a risk of contact sexual exploitation to minors. An analysis of several studies, all of which include self-reported data, indicated that approximately 55% of child pornography offenders admitted to previous crimes. Michael Seto et al., *Contact Sex Offending by Men With Online Sexual Offenses*, 23 SEXUAL ABUSE 124 (2011) (meta-analysis of 24 international studies, which found that approximately one in eight online offenders, the vast majority of whom were child pornography offenders had an officially known contact sex offense history, but estimating that a much higher percentage, approximately one in two, in fact had committed prior contact sexual offenses based on clinical self-report data). Moreover, a study of 155 federal child pornography offenders in the United States who participated in the residential sex offender treatment program at FCI Butner from 2002-2005 found that official records, including the offenders' presentence reports in their child pornography cases, revealed that 26% had previously committed a contact sex offense, but also found that "self-reports" of the offenders in therapy revealed that 85% had committed prior hands-on sex offenses.  *See* Michael L. Bourke & Andres E. Hernandez, *The Butner Study Redux: A Report on the Incidence of Hands-On Child Victimization by Child Pornography Offenders*, 24 J. FAM. VIOLENCE 183 (2009). Although some studies put the percentage lower than 50%, most of those involved only officially reported

or prosecuted offenses. More reliable data comes from studies involving offenders' self-reports of criminal sexual conduct.

As the Sentencing Commission noted in its 2012 study on child pornography sentencing, "the much higher percentage of prior contact sex offending found by the "self-report" studies is in large part attributable to the fact that many of the self-reported prior child sex offenses were not captured by official reports. Studies show that only an "estimated 1 in 20 cases of child sexual abuse is reported or identified and that an arrest was made in only 29% of reported juvenile sexual assaults." This research demonstrates that a very large percentage of child sex abuse is unreported. As such, regardless of whether one relies on official reports, self-reports, or a combination, "[t]he key point, that some child pornography offenders have committed officially undetected contact offenses[,] is not controversial.'" U.S. Sent'g Comm'n, 2012 Report to the Congress: Federal Child Pornography Offenses, at 173-74 (2012). The Sentencing Commission reaffirmed these findings in its 2021 report on non-production offenses. In the 2021 report, the Sentencing Commission found that approximately half of the non-production offenders in the study engaged in other aggravated conduct before or concurrently with their instant child pornography offense. *See* U.S. Sent'g Comm'n, Federal Sentencing of Child Pornography: Non-Production Offenses, at 39-43 (2021).[1]

While defendant Guy is 75 years old, this Court cannot be assured that he will no longer pose a threat to children after his release. The Seventh Circuit has noted that at least one study suggests that a significant number of repeat sex offenders are over age fifty. *United States v. Beier*, 490 F.3d 572, 574-75 (7th Cir. 2007). In 2021, the Sentencing Commission found that the

---

[1] U.S. Sent'g Comm'n, Federal Sentencing of Child Pornography: Non-Production Offenses (2021), https://www.ussc.gov/sites/default/files/ pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf.

[10]

average age of non-production child pornography offenders was comparatively high at 41 years old. *See* U.S. Sent'g Comm'n, Federal Sentencing of Child Pornography: Non-Production Offenses, at 64 (2021). The sentencing court is free to place the greatest weight on the need to protect the public against further crimes by the defendant when deciding on the appropriate sentence in a child exploitation case. *See United States v. Garthus*, 652 F.3d 715, 720-21 (7th Cir. 2011). Studies cited by the Seventh Circuit report recidivism among pedophilic sex offenders in general ranging between a low of 10 percent and a high of 50 percent. *Id*. Given this risk, a sentence below the Guideline range and the applicable minimum statutory sentence would not reasonably protect the public from further crimes by the defendant and would not sufficiently deter the defendant in the future after his release from imprisonment.

   D.  **The Sentencing Range Set Forth in the Guidelines**

  The sentence recommended by the Guidelines is also a factor that the sentencing court is required to consider pursuant to Section 3553. 18 U.S.C. § 3553(a)(4)(A). After making an accurate Guideline calculation, the sentencing court must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Ramirez-Mendoza*, 683 F.3d 771, 774 (7th Cir. 2012). When the statutorily mandated sentence is greater than the Guideline range, the minimum sentence mandated by the statute controls. U.S.S.G. § 5G1.1. Guy's final Guideline imprisonment range will likely be 51-63 months based on a criminal history category III, offense level 22, assuming this Court will elect not to impose a two-level enhancement under the Guidelines for use of a computer. (Dkt. No. 44, PSR ¶¶ 45 and 94) The probation department has determined that Guy has a sustained prior conviction for an offense under Indiana law involving the possession of child pornography. (Dkt. No. 44, PSR ¶¶ 93-94) Such a prior conviction triggers a mandatory minimum sentence of 10 years pursuant to 18 U.S.C. § 2252(b)(2) and

therefore sets the Guideline sentence at 10 years/120 months. 18 U.S.C. § 2252(b)(2), U.S.S.G. § 5G1.1.

**IV.     The Defendant has Sustained a Prior Conviction Relating to the Possession of Child Pornography**

Clearly the probation department correctly classified Guy's 2021 conviction for felony possession of child pornography as an offense constituting "possession…of child pornography" triggering the minimum sentence of 10 years mandated by 18 U.S.C. § 2252(b)(2). The child exploitation offense involved Guy publicly viewing child pornography and knowingly possessing many data storage devices which contained child pornography.  Section 2252(b)(2) establishes the penalties for possession of sexually explicit material involving minors in violation of 18 U.S.C. § 2252(a)(4)(B), as follows:

> Whoever violates, or attempts or conspires to violate, paragraph (4) of subsection (a) shall be fined under this title or imprisoned not more than 10 years, or both, but if any visual depiction involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age, such person shall be fined under this title and imprisoned for not more than 20 years, **or if such person has a prior conviction under…the laws of any State relating to…possession…of child pornography, such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.**

18 U.S.C. § 2252(b)(2).

The timing of the events demonstrates that at the time of the charged possession of child pornography identified in the indictment, April 30, 2021, Guy had been convicted of a prior child pornography possession offense. The timing of the relevant events occurred as follows:

- On August 10, 2018, Guy was found viewing child pornography at a Wendy's restaurant in Loogootee, Indiana, and his computer was seized (Dkt. No. 44, PSR ¶ 61)

[12]

- On August 11, 2018, Guy's residential property was searched and both computer equipment and data storage devices containing child pornography were seized (Dkt. No. 44, PSR ¶ 61)

- On August 11, 2018, Guy was charged with possession of child pornography by Martin County and was thereafter released on bond (Dkt. No. 44, PSR ¶ 61)

- On April 22, 2021, Guy was sentenced for possession of child pornography by the Martin County Circuit Court (Dkt. No. 44, PSR ¶ 61)

- On April 30, 2021, Guy was found in possession of additional child pornography files and printed materials by community corrections officers, and Guy admitted he possessed the materials.

- On May 1, 2021, in a statement provided to investigators, Guy admitted that he viewed child pornography at his residence while on bond between August 10, 2018, and April 22, 2021.

- On August 26, 2021, after the execution of a search warrant at his residence uncovered more child pornography files, Guy admitted possession of the materials. Guy was indicted in the instant case for possession of child pornography files he possessed on or about April 30, 2021.

- On June 15, 2023, Guy pleaded guilty to the possession of child pornography offense named in the indictment.

Based on this series of events, it is obvious that Guy possessed a collection of child pornography materials on April 30, 2021, different from those he possessed and was prosecuted for by Martin County, Indiana, in August of 2018. The computer and data storage devices related to the Martin County prosecution were seized by law enforcement officials in August of 2018.

[13]

The Seventh Circuit has held that a § 2252(b)(2) enhancement "does not require the state statute of conviction to be the same as or narrower than the analogous federal law." *United States v. Kaufmann*, 940 F.3d 377, 378 (7th Cir. 2019) (quoting *United States v. Kraemer*, 933 F.3d 675 (7th Cir. 2019)). Resultingly, state convictions "relating to…possession…of child pornography" support the mandatory minimum sentence enhancement. *Id.*; *United States v. Roehl*, 561 Fed.Appx. 531, 532 (7th Cir. 2014). Guy's conviction for felony possession of child pornography in Martin County therefore invokes the enhancement.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court impose a reasonable sentence in this case consistent with the Guidelines, the 18 U.S.C. § 3553(a) sentencing factors, and the minimum sentence mandated by 18 U.S.C. § 2252(b)(2).

Respectfully Submitted,

ZACHARY A. MYERS
United States Attorney

By:   s/ Todd S. Shellenbarger
Todd S. Shellenbarger
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on **July 19, 2023,** the foregoing Government's Sentencing Memorandum was filed electronically under seal. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

  Dax Womack
  Attorney at Law

By:    s/ Todd S. Shellenbarger
        Todd S. Shellenbarger
        101 Martin Luther King Blvd.
        Federal Building, Room 250
        Evansville, IN  47708
        Phone:  (812) 465-6475
        E-mail: Todd. Shellenbarger@usdoj.gov